# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>THE MORTGAGE STORE, INC.,<br><br>              Debtor.<br>_____<br><br>DANE S. FIELD,<br><br>              Plaintiff,<br><br>   vs.<br><br>GEORGE W. LINDELL, et al.,<br><br>              Defendants. | Case No.: 10-03454<br>(Chapter 7)<br><br><br><br><br>Adv. Pro. No.: 10-90146<br><br><br><br><br>Re: Docket No. 146 |

### MEMORANDUM OF DECISION ON PLAINTIFF'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT MANO-Y&M, LTD.

The trustee of The Mortgage Store, Inc. ("Debtor"), seeks to recover a transfer to defendant Mano-Y&M, Ltd. ("Mano"), as fraudulent. I previously ruled that the transfer was fraudulent under the Bankruptcy Code and the Hawaii Uniform Fraudulent Transfer Act, but that unresolved questions of fact precluded a finding that the trustee may recover the transfer from Mano. The trustee has

filed a supplemental motion for summary judgment (docket no. 146) with additional evidence and argument regarding Mano's status as an initial or subsequent transferee, and Mano has responded. I now hold that Mano was an initial transferee from whom the trustee may recover the full amount of the transfer.

**FACTS**

In 1996, the Debtor started business as a mortgage broker. In 2005 or 2006, the Debtor began making direct loans to borrowers, using money borrowed from individual investors at relatively high interest rates. The Debtor's cost of borrowing exceeded the yield on its loans and investments. As early as September 2006, the Debtor was able to repay its debts only by borrowing more money. In other words, the Debtor's business quickly degenerated into a Ponzi scheme. By June 30, 2007, the Debtor was insolvent.

Defendant George W. Lindell was the sole shareholder and president of the Debtor from 1996 through 2008. On or about December 12, 2008, Mr. Lindell and Mano entered into a written agreement pursuant to which Mr. Lindell agreed to purchase from Mano a property in Texas known as Raymondville Plaza. He made an earnest money deposit of $10,000 by check dated December 15, 2008. Under the agreement, Mr. Lindell had the right to give notice of termination by

U.S. Bankruptcy Court - Hawaii   #10-90146   Dkt # 167   Filed 09/27/12   Page 2 of 9

specified dates. He did not terminate the agreement.

On January 19, 2009, after Mr. Lindell's termination rights had expired, the parties signed all but one of the documents required to close the transaction. (The exception was the deed from Mano to Mr. Lindell. Mr. Lindell and one of Mano's two signers executed the deed on January 19, 2009; the other Mano signer did so the next day, January 20.)

On January 20, 2009, Lindell caused the Debtor to transmit $311,065.25 of the Debtor's funds to the client trust account of Mark Freeland, a Texas attorney. The parties agree that Mr. Freeland was Mano's attorney; they disagree about whether Mr. Freeland also acted as escrow holder. The sale transaction closed that day, and Mr. Lindell became title holder of the property.

On November 12, 2010, the Debtor filed a voluntary petition for chapter 7 relief under the Bankruptcy Code and Dane S. Field was appointed trustee.

The trustee commenced this adversary proceeding on December 3, 2010, alleging that the transfer to Mano on January 20, 2009, was fraudulent under the Bankruptcy Code and the Hawaii Uniform Fraudulent Transfer Act.

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to

3

judgment as a matter of law." Fed. R. Civ. P. 56(a), Fed. R. Bankr. P. 7056; see also Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 707 (9th Cir. 2008). In deciding a summary judgment motion, the court does not weigh evidence, but rather determines only whether a material factual dispute remains for trial. Covey v. Hollydale Mobilehome Estates, 116 F.3d 830, 834 (9th Cir. 1997). In making this determination, the court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in favor of the nonmoving party. McSherry v. City of Long Beach, 584 F.3d 1129, 1135 (9th Cir. 2009).

## DISCUSSION

I previously ruled (docket no. 123) that the transfer to Mano was fraudulent under the Bankruptcy Code, 11 U.S.C. § 548(a)(1) (2006), and the Hawaii Uniform Fraudulent Transfer Act, Haw. Rev. Stat. § 651C-4(a) (2007). (The trustee can assert avoidance claims under state law by virtue of 11 U.S.C. § 544(b).) I denied summary judgment on the question of whether Mano is liable for the fraudulent transfer as initial transferee pursuant to 11 U.S.C. § 550(a)(1).

Section 550(a) of the Bankruptcy Code provides that "to the extent that a transfer is avoided under section 544 . . . [or] 548 . . ., the trustee may recover . . . the property transferred, or . . . the value of such property, from – (1) the initial

4

transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a).

The distinction between the initial transferee and a subsequent transferee is crucial. If Mano is the initial transferee, it is strictly liable and the trustee may recover the fraudulent transfer. In re Bullion Reserve of North America, 922 F.2d 544, 547 (9th Cir. 1991). If Mano is a subsequent transferee, however, Mano is not liable it if proves that it took the transfer for value, in good faith, and without knowledge of the transfer's voidability. 11 U.S.C. § 550(b)(1).

The statute does not define the phrase "initial transferee." In the Ninth Circuit, a transferee is one who has "dominion" over the transferred property. Nat'l Tel. & Telecomm'ns, Inc. v. Universal Serv. Admin. Co. (In re Incomnet, Inc.), 563 F.3d 1064, 1071 (9th Cir. 2006). "The dominion test focuses on whether the recipient of funds has legal title to them and the ability to use them as he sees fit." Id.

The dominion test relies heavily on whether a party took legal title to the transferred property. "The dominion test we have crafted strongly correlates with legal title. . . . In the vast majority of cases, possessing legal title to funds will equate to having dominion over them." Id. at 1073. In "those unusual situations

5

in which legal title to funds and the right to put those funds to use have been separated," id. at 1073-74, the party with "discretion," "authority," or "power" over the funds has "dominion." Id. at 1074.

In making this determination, one must remember that that someone always has dominion over property, id. at 1076, and that "dominion" does not mean absolute unfettered power, because the law always restrains our use of money and property, id. at 1075. This suggests that, if several parties have some measure of influence over a particular fund, the party with the greatest amount of power has "dominion." Stated another way, sometimes one can identify the party with "dominion" by a process of elimination.

One kind of power, however, is not sufficient (standing alone) to establish "dominion." The principal of a corporation has the power to control the corporation's conduct and to cause the corporation to disburse its money. This is not sufficient, however, to give the principal "dominion" over money which the principal causes the corporation to disburse in payment of the principal's personal obligations. Schafer v. Las Vegas Hilton Corp. (In re Video Depot, Ltd.), 127 F.3d 1195, 1199-1200 (9th Cir. 1997). Therefore, the fact that Mr. Lindell was able to cause the Debtor to pay for the property Mr. Lindell had agreed to buy from Mano does not mean that Mr. Lindell had "dominion" over, and was the

6

initial transferee of, that money. (Mr. Lindell is still liable for the transfer, however, because section 550(a) imposes the same liability on the "initial transferee" and the person for whose benefit the initial transfer was made.)

The parties argue at length about the continuing vitality of McCarty v. Richard James Enters., Inc. (In re Presidential Corp.), 180 B.R. 233 (B.A.P. 9th Cir. 1995). In McCarty, a corporation transferred funds to an escrow company as part of the purchase price for a personal residence for Manoukian, its president, sole director, and shareholder. After the corporation was placed in bankruptcy, its trustee sued to recover the transferred funds from several parties, including the seller's real estate agent. The question before the BAP was whether the real estate agent was an initial transferee of the funds. Applying what it referred to as a "dominion or control" test, the BAP held that Manoukian was the initial transferee. The BAP reasoned that the escrow holder held the funds as agent for the buyer – Manoukian – "prior to the conditions being met for the funds to be transferred from the buyer to the seller . . . ." Id. at 238. Because the debtor transferred the funds to escrow before the conditions to closing were met, escrow held the funds as agent for Manoukian, not the seller, when the transfer was made, so Manoukian was the initial transferee.

The trustee correctly points out that Incomnet overruled McCarty to the

7

extent that the "dominion" test adopted by the Ninth Circuit in Incomnet is different from the "dominion or control" test stated by the BAP in McCarty. This does not necessarily, mean, however, that the result in McCarty is wrong. The buyer of property probably has "dominion" over the buyer's deposits in escrow until the conditions of closing have been met; during that period, no one has more power over the deposited funds than the buyer.

There is a crucial distinction between the facts of this case and McCarty. In McCarty, the debtor transferred funds to escrow before the conditions to closing had been met. In this case, however, all of Mr. Lindell's rights to cancel the transaction had expired and Mano had performed all of its pre-closing obligations before the Debtor sent the money to Mr. Freeland. At that point, Mr. Lindell had no power to cancel the transaction and no right to require Mr. Freeland or Mano to return the money. Because Mano had done everything the contract required and all of the conditions precedent had been satisfied, Mano was unconditionally entitled to the money. This means that Mano, and not Mr. Lindell, had "dominion" over the money from the moment the Debtor parted with it, and that Mano is the "initial transferee."

The parties also argue at length about whether Mr. Freeland was an escrow agent for both parties, or rather was only the attorney for Mano. I need not answer

8

U.S. Bankruptcy Court - Hawaii    #10-90146    Dkt # 167    Filed 09/27/12    Page 8 of 9

this question because, by the time Mr. Freeland received the Debtor's money, no one other than Mano had any right to it. In other words, even if Mr. Freeland acted as escrow, his agency for Mr. Lindell had ended by the time he got the Debtor's money.

## CONCLUSION

The trustee's motion for summary judgment should be granted. The trustee's counsel shall prepare an appropriate order.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: **09/27/2012**

9

U.S. Bankruptcy Court - Hawaii   #10-90146   Dkt # 167   Filed 09/27/12   Page 9 of 9